UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALAR SAAREMETS, on Behalf of
Himself and on Behalf of All
Others Similarly Situated,

        Plaintiff,

  v.

WHIRLPOOL CORPORATION, a
Delaware Corporation; and DOES
1 through 10, inclusive

        Defendant.
_____/

Civ. No. S-09-2337 FCD/EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the motion of defendant Whirlpool Corporation ("Whirlpool" or "defendant") to dismiss plaintiff Alar Saaremets' ("plaintiff") class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiff

///

---

[1] Whirlpool also filed a motion to strike concurrent with its motion to dismiss.  However, because the court dismisses the action on statute of limitations grounds, the court need not address the issues raised therein.

1

opposes the motion. The court heard oral argument on the motion on March 12, 2009. For the reasons set forth below, defendant's motion is GRANTED.

**BACKGROUND**

**A.   Procedural History**

On July 17, 2009, plaintiff filed a class action lawsuit in the California Superior Court, Nevada County. (Docket # 1.) Whirlpool removed the complaint to this court on August 21, 2009, on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1441(a), and 1453. (Id.) Thereafter, on September 18, 2009 Whirlpool concurrently filed a motion to change venue and a motion to dismiss. (Docket #s 17, 18.) The court continued the hearing on the motion to dismiss in order to hear the motion to change venue in the first instance. (Docket # 19.) Plaintiff opposed both motions. (Docket #s 25, 30.) However, Whirlpool subsequently withdrew its motion to change venue on January 8, 2010. (Docket # 29.) The matter is now before the court on Whirlpool's motion to dismiss.

**B.   Factual Background**

Whirlpool is a corporation that manufacturers and sells a variety of home appliances,[2] including gas and electric ovens. (Compl. ¶ 2.) Most Whirlpool ovens include a self-cleaning system, which the user can activate by pressing a button marked "Self-Clean" or "Auto Clean" on the oven's electronic touch pad. (Id. ¶¶ 2, 4.) Once engaged, the oven locks and heats itself to

---

[2] Whirlpool sells the appliances they manufacture under a variety of product names, including Whirlpool, KitchenAid, Maytag, and Jenn-Aire. (Compl. ¶ 2.)

2

1  a high temperature, sometimes exceeding 1,000 degrees.  (Id.
2  ¶ 6.)
3       Plaintiff alleges that the excessive heat from the self-
4  cleaning system causes damage to the electronic components in the
5  oven's control panel.  (Id. ¶ 8.)  Specifically, plaintiff
6  alleges that the defects in Whirlpool's ovens result in damage to
7  the control panel "after as few as two and as many as five or six
8  uses of the self-cleaning cycle."  (Id. ¶ 11.)  Plaintiff
9  suggests that the damage correlates with the "number of times the
10 self-cleaning cycle is used rather than the age of the oven."
11 (Id.)
12      Around August 2002, plaintiff purchased a KitchenAid oven
13 for his home.  (Id. ¶ 40.)  Plaintiff alleges that when he
14 purchased the oven, he consulted Whirlpool's product literature
15 regarding the self-cleaning system and relied on this information
16 when he decided to purchase from Whirlpool.  (Id. ¶ 41.)
17 Plaintiff used the self-cleaning system only two times after
18 purchasing the oven in August 2002, the most recent of which
19 occurred in May 2009.  (Id. ¶ 42.)  After his second use,
20 plaintiff alleges that the oven locked, the control panel went
21 dark, and the oven was no longer useable.  (Id.)  When plaintiff
22 contacted Whirlpool to arrange for repairs, Whirlpool informed
23 plaintiff that the repairs were no longer covered by his
24 warranty.  (Id.)  Plaintiff then contacted a licensed repair
25 professional who informed him that the self-cleaning system
26 destroyed the oven's control panel, and that the cost of repair
27 would be approximately $800.  (Id. ¶¶ 43-44.)
28 ///

Plaintiff brings this action on behalf of himself and all California consumers who purchased or previously owned a Whirlpool oven with an electronic control panel and a self-cleaning system, and who have incurred repair costs as a result of the self-cleaner's malfunction.[3]  (Id. ¶ 48.)  Specifically, plaintiff alleges that Whirlpool violated (1) California's Unfair Competition Law ("UCL" or "UCL claim"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's Consumer Legal Remedies Act ("CLRA" or "CLRA claim"), Cal. Civ. Code § 1770 et seq.; and (3) California Business and Profession Code § 17500 et seq., prohibiting false advertising ("FAL" or "FAL claim").  The gravamen of plaintiff's claims is that Whirlpool engaged in false advertising by failing to disclose to customers that the self-cleaning system in its ovens would result in damage to the control panel after only several uses.  (Id. ¶¶ 59-65.)  In addition, plaintiff alleges that Whirlpool engaged in fraudulent, unlawful, and deceptive business practices by engaging in an advertising campaign that failed to acknowledge the specific deficiencies of the self-cleaning system.  (Id. ¶¶ 70-72, 79-80.) Whirlpool moves to dismiss plaintiff's claims, arguing, *inter alia*, that plaintiff's claims are barred by the statute of limitations.  (Def.'s MTD, filed September 18, 2009, 15:3-16:2.)

---

[3]  Plaintiff has defined the class as:

> All California consumers who previously owned or do own an oven with an electronic control panel and a self-cleaning system manufactured by Whirlpool who, between July 17, 2005 and the present and [sic] who incurred costs to repair their oven following use of the self-cleaning cycle . . . ."

(Compl. ¶ 48.)

4

**STANDARD**

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555. Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp., 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

**ANALYSIS**

Plaintiff alleges Whirlpool violated the UCL, CLRA, and FAL. Whirlpool moves to dismiss all three claims, arguing they are time-barred by the relevant statutes of limitations. (Def.'s MTD at 15:3-18:18.)

Claims for unfair competition under the UCL must be brought within four years after the cause of action accrued. Cal. Bus. & Prof. Code § 17208. Claims arising under CLRA must be commenced within three years of the alleged violation. Cal. Civ. Code § 1783. Similarly, although no specific statutory provision sets forth the statute of limitations for FAL claims, California Code of Civil Procedure § 338(a) imposes a three year statute of limitations for "an action upon a liability created by statute, other than a penalty or forfeiture." See Rodarte v. Philip

6

Morris, Inc., No. CV03-0353FMC(CTX), 2003 WL 23341208, at *2 (C.D. Cal. June 23, 2003) (finding that section 338(a) applies to a FAL claim).

In opposing the motion, plaintiff concedes he filed his UCL, CLRA, and FAL claims outside the relevant statutes of limitations, and that they are thus facially time-barred. However, plaintiff contends that the delayed discovery rule and/or the principle of fraudulent concealment[4] are applicable to his claims and save them from the bar of the statutes of limitations. (Opp'n, filed Feb. 12, 2010, 10:12-12:13.) The court notes that although plaintiff's opposition does not specifically assert that the discovery rule and the principle of fraudulent concealment apply to his CLRA and FAL claims, the court assumes plaintiff intended to make this argument based on his opposition to the dismissal of his UCL claim on these grounds. Moreover, case law does not preclude the application of these doctrines to CLRA and FAL claims.[5] See Keilholtz v. Lennox Hearth Prods. Inc., No. C 08-00836 CW, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8, 2009) (acknowledging that the discovery rule and principle of fraudulent concealment apply to CLRA claims, but ultimately finding that the plaintiffs there did not plead sufficient facts to support their application); Burdick v. Union

---

[4] The court notes that plaintiff did not specifically use the term "fraudulent concealment" in his complaint or subsequent filings. However, plaintiff's allegations and the nature of his argument in support of tolling are tantamount to the principle of fraudulent concealment, as discussed herein. For purposes of clarity, the court uses this well-accepted term of art.

[5] The court thus rejects the argument in Whirlpool's reply that plaintiff has conceded these points by not addressing them in his opposition.

7

Sec. Ins. Co., No. CV 07-4028 ABC (Jcx), 2009 WL 4798873, at *10 n.16 (C.D. Cal. Dec. 9, 2009) (noting that because the parties generally analyzed "UCL and FAL statutes of limitations without differentiation," the court assumed that "the cited case law applying the UCL also applie[d] to FAL claims").  Thus, the court considers below whether the discovery rule and/or the doctrine of equitable tolling revives plaintiff's otherwise stale claims.

**A.   The Discovery Rule**

   **1.   UCL Claim**

Plaintiff's first cause of action alleges Whirlpool violated the UCL by failing to advertise that the self-cleaning system in Whirlpool's ovens causes damage to the control panel after several uses.  (Compl. ¶ 62.)  Specifically, plaintiff argues that Whirlpool's "ongoing and continuous scheme of material omissions" prevented him from discovering the defect in his oven, and that he had no actual or constructive knowledge of the defect prior to the oven's malfunction in May 2009.  (Opp'n at 11:10-28.)  In response, Whirlpool argues that the discovery rule does not, as a matter of law, apply to claims of unfair competition.  (Def.'s MTD at 15:3-16.)

"Although generally a cause of action accrues when all of its elements accrue, the delayed discovery rule postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action."  Keilholtz, 2009 WL 2905960, at *3 (citing Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 634 (2007)).  However, in Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc., 285 F.3d 848, 857 (9th Cir. 2002), the Ninth Circuit held that unfair competition claims under Section

8

17208 "are subject to a four-year statute of limitations which [begins] to run on the date the cause of action accrued, *not on the date of discovery*." (Emphasis added.)  There, the Ninth Circuit considered whether the district court erred in finding that the statue of limitations barred the plaintiff's UCL claim. Id. at 851.  In a truncated analysis, the Ninth Circuit ultimately found that the plaintiff's UCL claim fell within the four-year statute of limitations.  In so holding, it did not fully address the basis for its interpretation of Section 17208 as precluding application of the discovery rule.  Id.

Nevertheless, despite the brevity of the court's analysis in Karl Storz, various district courts in the Ninth Circuit have subsequently relied on Karl Storz to find that the discovery rule does not, as a matter of law, apply to claims of unfair competition under the UCL.  See, e.g., Perez v. Nidek Co. Ltd., 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) (finding, based on Karl Storz, that the discovery rule "does not apply to unfair competition actions"); Keilholtz, 2009 WL 2905960, at *4 (same); Keilholtz v. Superior Fireplace Co., No. C 08-00836 CW, 2009 WL 839076, at *7 (N.D. Cal. Mar. 30, 2009) (same); see also Rambus Inc. v. Samsung Elecs. Co., Nos. C-05-02298 RMW & C-05-00334 RMW, 2007 WL 39374, at *3 (N.D. Cal. Jan. 4, 2007) (same).

For example, in Perez, 657 F. Supp. 2d at 1166, the district court considered whether the discovery rule was applicable to the plaintiff's facially time-barred unfair competition claim brought under the UCL.  Id.  The court held that, "in the absence of [a] clear indication from California courts" that Karl Storz's interpretation of Section 17208 was incorrect, the discovery rule

9

was inapplicable to the plaintiff's UCL claim. Id. Similarly, in Keilholtz, 2009 WL 2905960, at *4, the court directly cited to Karl Storz for the proposition that the discovery rule did not apply to UCL claims. Id.

While these various district courts have followed Karl Storz, there is a split of authority among California courts regarding whether the discovery rule applies to UCL claims. Some courts have definitively held that the discovery rule does not apply. See Snapp & Assoc. Ins. Servs., Inc. v. Robertson, 96 Cal. App. 4th 884, 891 (2002). Other courts have found that the discovery rule does, or *probably* does, apply to unfair competition claims under Section 17200 *et seq*. See Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1295 (2002) (noting that the statute of limitations for a UCL claim "probably run[s] from the time a reasonable person would have discovered the basis for a claim"); see also Broberg v. Guardian Life Ins. Co. of Am., 171 Cal. App. 4th 912, 920-21 (2009) ("[W]e believe the better view is that the time to file a section 17200 cause of action starts to run only when a reasonable person would have discovered the factual basis for a claim."). The California Supreme Court has expressly acknowledged that the issue of whether the discovery rule applies to UCL claims is currently unsettled under California law. See Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 635 n.7 (2007).

While there remains a split of authority in the state courts, this court is bound to follow Karl Storz and find that the discovery rule does not apply to plaintiff's unfair competition claim. As the district court in Perez recognized:

1  "Absent a clear indication from the California courts that the
2  Ninth Circuit's interpretation of Cal. Bus. & Prof. Code § 17208
3  was incorrect," this court must follow the interpretation set
4  forth in Karl Storz.  Perez, 657 F. Supp. 2d at 1166.  Indeed,
5  while a "circuit court's prediction of state law is not binding
6  in the same way as is its definitive interpretation of federal
7  law," it is well established that as a "practical matter a
8  circuit court's interpretations of state law must be accorded
9  great deference by district courts within the circuit."  Johnson
10 v. Symantec Corp., 58 F. Supp. 2d 1107, 1111 (N.D. Cal. 1999);
11 see also Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.,
12 973 F.2d 688, 696 n.4 (9th Cir. 1992) (noting that the Ninth
13 Circuit's "interpretation of California law is 'binding in the
14 absence of any subsequent indication from the California courts
15 that [its] interpretation was incorrect.'") (citing Owen v.
16 United States, 713 F.2d 1461, 1464 (9th Cir. 1983)).

17       Here, plaintiff purchased his oven in August 2002.  Under
18 Karl Storz, the court must find that the statute of limitations
19 in this case began to run on the date the cause of action
20 accrued, not the date plaintiff first discovered the defect.  The
21 date of accrual is the date plaintiff purchased his oven.  See
22 Burdick, 2009 WL 4798873, at *9.  Because plaintiff brought the
23 instant action nearly *seven years* after the cause of action
24 accrued, the claim is time-barred by the statute of limitations
25 set forth in Section 17208.

26       **2.   CLRA & FAL Claims**

27       Plaintiff's second and third causes of action allege that
28 Whirlpool engaged in (1) deceptive advertising practices in

11

violation of the CLRA, and (2) false advertising in violation of the FAL. Whirlpool moves to dismiss these claims also on the ground of the statute of limitations.

The factual basis for plaintiff's CLRA and FAL claims is similar to that raised in plaintiff's UCL claim. Plaintiff's CLRA claim alleges that Whirlpool engaged in a deceptive advertising campaign that advertised its ovens "as having an operational self-cleaning feature that can be used to reduce weekly cleaning" (Compl. ¶ 80), when in fact Whirlpool knew and concealed the fact that its ovens were defective. (Id. ¶¶ 80-81.) Plaintiff's FAL claim alleges that he relied on Whirlpool's statement that the self-cleaning system was an "important maintenance feature," and that plaintiff would not have selected the oven had he known of the defect. (Id. ¶¶ 63-64.)

As set forth above, "[a]lthough generally a cause of action accrues when all of its elements accrue, the delayed discovery rule postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action." Keilholtz, 2009 WL 2905960, at *3 (citing Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623, 634 (2007)). In order to invoke the discovery rule, the plaintiff must plead and prove facts showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and when he did actually discover the fraud or mistake. Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991) (applying California law). "Under this rule constructive and presumed

12

notice or knowledge are equivalent to knowledge.  So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run." Id.

Here, plaintiff's complaint fails to allege sufficient facts to demonstrate that the discovery rule applies to his CLRA and FAL claims.  Both claims are premised upon plaintiff's allegation that Whirlpool falsely advertised its ovens as having operational self-cleaning systems and concealed this knowledge from its consumers.  However, plaintiff's own representations clearly indicate that plaintiff had "the opportunity to obtain knowledge from sources open to his investigation." Gen. Bedding Corp., 947 F.2d at 1397.  Plaintiff's allegations, which this court must assume are true, suggest that a reasonable person would have used the self-cleaning system in a Whirlpool oven more than twice over a seven year period, and thus would have had multiple opportunities to discover a faulty cleaner that, in plaintiff's words, malfunctions "after as few as two and as many as five or six uses of the self-cleaning cycle."  (Compl. ¶ 11.)  This conclusion is underscored by plaintiff's repeated reference to his reliance on Whirlpool advertising material that touted the self-cleaning system as an important part of *weekly* maintenance.  Because plaintiff had reason to discover his CLRA and FAL claims within the three year statutes of limitations, the discovery rule is therefore inapplicable.  See Gen. Bedding Corp., 947 F.2d at 1397 (noting that the statute of limitations "commences to run" when the plaintiff had opportunity to obtain knowledge from

13

1  accessible sources that would put a reasonable person on notice);
2  Keilholtz, 2009 WL 2905960, at *3 (same).  The discovery rule,
3  thus, cannot revive plaintiff's CLRA and FAL claims from the bar
4  of the statute of limitations.

5  **B.   Equitable Tolling**

6      Plaintiff also, alternatively, argues that the doctrine of
7  equitable tolling supports denial of Whirlpool's motion to
8  dismiss.  Plaintiff contends that Whirlpool deceptively and
9  fraudulently concealed from plaintiff and the class that the
10 self-cleaning system would cause significant damage to the oven.
11 (Compl. ¶¶ 56-58.)  Based on Whirlpool's alleged conduct,
12 including its alleged use of deceptive marketing materials and
13 sales practices, plaintiff asserts that the principle of
14 fraudulent concealment should toll the applicable statutes of
15 limitations.  (Opp'n at 12:1-13.)  Whirlpool asserts to the
16 contrary that plaintiff did not act with the requisite diligence
17 necessary to establish fraudulent concealment.  (Reply, filed
18 Feb. 19, 2010, 15:3-13.)

19     "A close cousin of the discovery rule is the well accepted
20 principle of fraudulent concealment."  Bernson v. Browning-Ferris
21 Indus. of Cal., Inc., 7 Cal. 4th 926, 931 (1994).  If a defendant
22 engages in fraudulent acts which conceal the basis for a cause of
23 action, the statute may be tolled, "but only for that period
24 during which the claim is undiscovered by plaintiff or until such
25 time as plaintiff, by the exercise of reasonable diligence,
26 should have discovered it."  Id. (quoting Sanchez v. S. Hoover
27 Hosp., 18 Cal. 3d 93, 99 (1976)).  The principle of fraudulent
28 concealment, like the discovery rule, is an equitable principle

14

1  designed to estop a defendant "from profiting from his own wrong
2  to the extent that it hindered an 'otherwise diligent' plaintiff
3  in discovering his cause of action."  Id. (quoting Pashley v.
4  Pac. Elec. Ry. Co., 25 Cal. 2d 226, 231 (1944)).

5  In order to establish fraudulent concealment, a plaintiff
6  must plead the following:  "(1) when the fraud was discovered;
7  (2) the circumstances under which it was discovered; and (3) that
8  the plaintiff was not at fault for failing to discover it or had
9  no actual or presumptive knowledge of facts sufficient to put him
10 on inquiry."  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017,
11 1024 (9th Cir. 2008) (quoting Baker v. Beech Aircraft Corp., 39
12 Cal. App. 3d 315, 321 (1974)).  "In urging lack of means of
13 obtaining knowledge, it must be shown that in the exercise of
14 reasonable diligence the facts could not have been discovered at
15 an earlier date."  Baker, 39 Cal. App. 3d at 321.

     **1.   UCL Claim**

In support of his equitable tolling argument, plaintiff alleges that Whirlpool "concealed" facts and used "deceptive marketing materials and sales practices" to misrepresent to plaintiff that the self-cleaning system "was fit to be used for the life of the oven."  (Compl. ¶¶ 56-57.)  Plaintiff claims that Whirlpool engaged in a "comprehensive advertising campaign" that emphasized the importance of the self-cleaning system in its ovens, but failed to disclose that the self-cleaner damages the oven after only several uses.  (Id. ¶¶ 5, 12.)  More specifically, plaintiff alleges that Whirlpool utilized internet advertising and in store product descriptions that highlighted the self-cleaning system as an "important maintenance feature."

15

(Id. ¶ 62.)  In addition, plaintiff points to language on Whirlpool's website that discusses the self-cleaning function as follows: "Consider this an important maintenance feature: it could save you a lot of time in *weekly* maintenance."  (Id. ¶ 5 (emphasis added).)  Plaintiff asserts he relied on these representations when he purchased the oven, and that he would not have purchased the oven if Whirlpool had disclosed that the self-cleaning system would eventually lead to the oven's failure.  (Id. ¶ 71.)

These alleged facts do not sufficiently plead fraudulent concealment.  Although plaintiff's complaint does include facts alleging when and under what circumstances he discovered the oven's faulty self-cleaning cycle, plaintiff does not allege facts demonstrating that he *reasonably* failed to discover the alleged deficiency within the four-year statute of limitations.  Plaintiff's claim that he "could not have reasonably known" that the oven would malfunction is wholly unsupported by the facts contained in his complaint.  On the contrary, accepting plaintiff's own allegations as true, plaintiff clearly was aware of information in Whirlpool's product literature and on its website that encouraged customers to use the self-cleaning system as part of their weekly oven maintenance.  Indeed, plaintiff alleges he specifically relied on the fact that the self-cleaning system was an important, routine maintenance feature when he bought the oven.  (Compl. ¶¶ 41, 69.)

As defendant correctly argues, plaintiff cannot have it "both ways" in this action.  He cannot claim that Whirlpool convinced him to buy an oven by fraudulently advertising an

16

"important maintenance feature" that should be used on a "weekly basis," and then proceed to argue that using the self-cleaning system two times in seven years is tantamount to exercising reasonable diligence.  See Baker, 39 Cal. App. 3d at 321.

Moreover, there are no facts in plaintiff's complaint that suggest Whirlpool used deceptive practices to prevent plaintiff or other customers from using the self-cleaning system or discovering its alleged deficiency.  Instead, the opposite is precisely true.  Plaintiff alleged a number of bases why a Whirlpool oven owner, in the course of exercising reasonable diligence, *would* have reason to discover facts sufficient to bring a potential cause of action against Whirlpool within the four-year statute of limitations--namely, his knowledge that the self-cleaning system is an "important maintenance feature," and that it should be used on a "weekly basis."  Finally, plaintiff failed to allege any affirmative conduct on the part of Whirlpool that would have lulled a consumer into the erroneous belief that he or she was purchasing an oven which would never fail.  As a result, plaintiff does not meet the pleading requirements necessary to establish fraudulent concealment as a basis to toll the statute of limitations on his UCL claim.

Accordingly, Whirlpool's motion to dismiss plaintiff's first cause of action for unfair competition is GRANTED.

**2.   CLRA & FAL Claims**

Finally, plaintiff asserts that his CLRA and FAL claims against Whirlpool for false and deceptive advertising should be equitably tolled under the principle of fraudulent concealment. The crux of plaintiff's argument rests once again on his

17

assertion that it was impossible for him to know of his potential claim against Whirlpool until he discovered the malfunction in May 2009. (Opp'n at 12:6-13.)

However, much like his UCL claim, the allegations in plaintiff's complaint do not demonstrate that he acted reasonably in failing to discover the faulty self-cleaning system at a date within the three-year statute of limitations. Baker, 39 Cal. App. 3d at 321. Plaintiff's allegations, discussed *supra*, reveal to the contrary--that a reasonable plaintiff, relying on the same information purportedly relied on by plaintiff, would have discovered the faulty self-cleaning system well before May 2009.

In sum, implicitly, plaintiff's filings suggest that plaintiff could fail to exercise reasonable diligence within the statute of limitations, eventually discover a defect at a distant time in the future, and still preserve a claim theoretically, *ad infinitum*, based on a theory of equitable tolling. This argument, however, is not consistent with the general policy behind statutes of limitations. "Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost." Ashland Chem. Co. v. Provence, 129 Cal. App. 3d 790, 794 (1982). To that end, courts must enforce statutes of limitations to "promote desirable social ends and give security and stability to human affairs." Handel v. Artukovic, 601 F. Supp. 1421, 1434 (C.D. Cal. 1985) (citing Scheas v. Robertson, 38 Cal. 2d 119, 125-26 (1951)). Here, the mere availability of the equitable tolling doctrine does not alleviate plaintiff's countervailing

18

responsibility to exercise reasonable diligence to discover an alleged defect within the statute of limitations. Based on plaintiff's own allegations, the court cannot find plaintiff met his legal obligations.

Accordingly, Whirlpool's motion to dismiss plaintiff's CLRA and FAL causes of action is GRANTED.[6]

**C.   Leave to Amend**

Considering the bases upon which the court dismisses plaintiff's claims, described above, plaintiff is not granted leave to amend. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." Cal. Architectural Building Prods. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). While leave to amend should be freely given pursuant to Federal Rule of Civil Procedure 15, the court is not required to allow futile amendments. Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983). Here, amendment of the complaint with respect to any of plaintiff's causes of action would be futile under the governing law described above. Plaintiff does not describe any facts that would allow his claims to fall within the applicable statutes of limitations, nor does he describe any facts that could plausibly toll the statute of limitations. Iqbal, 129 S. Ct. at 1949. Therefore, the court denies plaintiff leave to amend with respect to all of his causes of action.

///

---

[6] Because the court grants Whilrpool's motion on the basis of the statute of limitations, it need not address defendant's alternative bases for dismissal of the complaint.

19

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.  Plaintiff is not permitted leave to amend.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: March 18, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE